**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JAMES L. McALEER,

     Defendant-Appellant.

No. 99-8078
(D.C. No. 96-CR-15-4-B)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, Circuit Judge, **MURPHY**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

On January 26, 1996, James McAleer, his wife, Shirley McAleer, and five others, namely, James Gilmore, his daughter, Mary Gilmore, Anthony Carta, Floyd Wise and Lauree Wise, were variously indicted in a 21-page indictment filed in the United States District Court for the District of Wyoming with conspiracy to launder money in violation of 18 U.S.C. § 1956(h), with wire fraud in violation of 18 U.S.C. § 1343, with securities fraud in violation of 15 U.S.C. §§ 77(q)(a) and 77(x), and with mail fraud in violation of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

18 U.S.C. § 1341. All defendants except for the one defendant, James Gilmore, were jointly tried in a jury trial which commenced on November 4, 1996.[1] All six defendants were convicted by the jury. A motion for new trial filed by each of the six convicted defendants was granted on the grounds that there had been prosecutorial misconduct on the part of the prosecuting attorney who had repeatedly inquired of Mary Gilmore, in his cross-examination of her, as to whether she had "taken the Fifth Amendment" during certain administrative proceedings. (The government conceded error in its cross-examination of Mary Gilmore.) The defendants in that first trial then filed motions to dismiss the indictment on the grounds that to retry them would violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. The district court denied those motions and, on appeal, we affirmed. *United States v. McAleer,* 138 F.3d 852 (10th Cir. 1998), *cert. denied,* 525 U.S. 854 (1998).

James and Shirley McAleer were the only two defendants tried in the second trial of this case, the other four defendants having entered into plea agreements with the government. By the time of the second trial Mary Gilmore had married Anthony Carta and both agreed to testify as government witnesses against the two McAleers.

The second jury acquitted Shirley McAleer on all counts, but convicted James McAleer on one count of securities fraud and one count of mail fraud. James McAleer

---

[1]The one defendant, James Gilmore, was not tried, he having remained in England and extradition efforts having proved unsuccessful.

was subsequently sentenced to five months of custody followed by five months of home detention. He now appeals his conviction and the sentence imposed.

On appeal, counsel asserts three grounds for reversal: (1) prosecutorial misconduct in closing argument to the jury deprived McAleer of a fair trial as guaranteed by the Sixth Amendment to the United States Constitution; (2) the district court erred in allowing one of the government's witnesses, Donald MacPherson, an attorney, to testify concerning various communications he had with McAleer, since such came within the attorney-client privilege; and (3) the district court erred in limiting counsel's cross-examination of  Mary Carta (nee Gilmore) in violation of the Confrontation Clause of the Sixth Amendment.[2]

At oral argument of this case, counsel's principal argument related to the court's limitation of his cross-examination of Mary Carta, and we shall consider that issue first. Prior to the second trial, McAleer's counsel filed a motion in limine in which he asked, *inter alia,* as follows:

### Prohibit Witnesses from Referring to the Prior Trial or the Outcome of that Trial

> Evidence regarding the outcome of the prior trial is
> irrelevant and unduly prejudicial to Defendant James

---

[2]At trial, counsel's theory of the case was that James McAleer at all times was acting in "good faith" and that McAleer was a "victim" of James Gilmore's elaborate scam in which McAleer did not in any way participate. On appeal, counsel does not contend that the evidence is insufficient to support the jury's verdict that McAleer was guilty on one count of securities fraud and one count of mail fraud. Accordingly, the chronology of events will not be recounted here. For background facts, see *United States v. McAleer,* 138 F.3d 852 (10th Cir. 1998), *cert. denied*, 525 U.S. 854 (1998).

McAleer. Therefore, the Defendant requests that it be excluded from the second trial pursuant to Evidence Rules 401, 402, and 403.

The Defendant requests that all parties be ordered to admonish each of their witnesses not to refer to the outcome of that trial. If a witness is impeached with his or her prior testimony from the first trial, that witness should be admonished to only refer to their "prior testimony" without any mention of the jury verdict or the Court's decision to grant the motions for new trial (emphasis added).

In a written response to counsel's motion the government spoke as follows:

Defendant requests that all parties be prohibited from referring to the prior outcome of the trial as being irrelevant and the United States agrees. The United States proposes that the language for impeaching or refreshing the recollection of a witness be as follows: "Do you recall testifying at a prior hearing . . . ."

The district court, prior to the second trial granted McAleer's motion and the colloquy between court and counsel on this matter reads as follows:

THE COURT: A hearing in the case of United States versus McAleer and McAleer on the defendants' motions in limine. The first is a motion to instruct the jury on the definitions of conspiracy and good faith. I will do that, so we need not argue it.

The next is to prohibit witnesses from referring to the outcome of the prior trial. I don't think anybody is going to do that, are they? So let's go at it.

MR. PICO: We are going to avoid even referring to a prior trial. We will refer at best as we can and all our witnesses will be instructed to refer to a prior hearing because obviously we have a full transcript of testimony here and I think it is going to be clumsy just to say, "Didn't you give testimony?" I think we need to refer to some sort of a prior hearing.

THE COURT: You can call it a hearing but not a trial.

MR. ENGELHARD: Your Honor, if I could be heard on that point, perhaps --

THE COURT: Well, we can't deal with it as if it never occurred, so it did occur so we've got to call it something. A hearing is as good as any.

MR. ENGELHARD: But, Your Honor, there may be times – and I'm not sure at this point, but I would like to leave that matter open or at least --

THE COURT: No, it is already ruled on. That's the difficulty with it.[3]

Counsel's argument, as we understand it, is that the district court committed reversible error in refusing to allow him to show that Mary Carta's "prior testimony" occurred during the "first trial," when McAleer, Mary Carta, and four others were all on trial. As indicated, the district court in its pre-trial ruling ordered that any reference to testimony given by any witness in the "first trial" be phrased as testimony given in a "prior hearing." In this connection, we note that it was counsel for McAleer who first asked the district court to "Prohibit Witnesses from Referring to the Prior Trial or the Outcome of that Trial." Further, in that same motion, counsel asked that in impeaching a witness by his prior testimony at the first trial "the witness should be admonished to only refer to their 'prior testimony' . . . ." The government agreed and suggested that the appropriate language for impeaching a witness or refreshing his memory would be to ask: "Do you recall testifying at a prior hearing . . . ." It is correct that at the hearing on McAleer's motion in limine his counsel backed off, a bit, from his original request and at

_____

[3]At a subsequent point in the hearing on counsel's motion in limine, counsel stated that a reference to prior "court proceeding [as opposed to a "prior trial"] would be okay."

that time indicated he "would like to leave that matter open or at least . . . ." Further, the record indicates that during his cross-examination of Mary Carta, counsel apparently changed his mind and decided that he wanted the jury to know that Mary Carta's "prior testimony" occurred at a so-called "first trial," where James McAleer, his wife Shirley, and Mary Carta, along with her husband, Anthony Carta, and Floyd and Lauree Wise were all on trial. At a sidebar conference during his cross-examination of Mary Carta, counsel stated that he wanted the court "to allow me to cross-examine Miss Gilmore [Mary Carta] on the fact that her prior testimony was in a jury trial here in court" and that "she lied in a very similar situation while she was being tried for her own guilt . . . ." The district court denied counsel's request and said his prior ruling on the matter would "stand." Counsel's reply was that he did not want to ask "any questions about the result in the case" and only wanted to show that her prior testimony was given in a jury trial with "12 people sitting in that jury box just as they are now and that she lied to them." In this general connection, we note that in his cross-examination of Mary Carta, counsel did establish that her prior testimony "back on December 10, 1996" occurred "right here in this court" at which time "she raised her right hand" and "swore to tell the truth" and that her prior testimony was "in front of Judge Brimmer."

As indicated, on appeal counsel argues that the district court erred in not allowing him in his cross-examination of Mary Carta to show that her "prior testimony" occurred during a so-called "first trial," rather than at a "prior hearing" or "prior proceeding ," and

that had he been allowed to show that her "prior testimony" occurred at a "prior trial," he could have then argued to the jury in the second trial that Mary Carta had, in his view, at least, lied to an earlier jury and that such supported counsel's belief that she had lied in her testimony before the second jury. We are not persuaded by this line of reasoning. It is just too tenuous. In this regard, it is well to note that counsel for McAleer first raised this issue in his motion in limine wherein he suggested that the district court at the second trial should "admonish" a witness at the second trial "to only refer to their 'prior testimony' . . . ."

We recognize that at the hearing on the motion in limine counsel hedged a bit on his earlier request, although at that hearing counsel did indicate that referring to the prior hearing as a prior "court proceeding would be okay." Further, it was clearly established on cross-examination of Mary Carta that her "prior testimony" was in a hearing, or proceeding, where she raised her right hand and swore to tell the truth before a judge. Clearly, the jury knew that the "prior testimony" did not occur at some prior informal hearing. If the jury had learned that Mary Carta's prior testimony occurred at a prior trial of McAleer, the obvious next step would be what was the outcome of the trial, which all agree would be improper. We think that, all things considered, the district court "drew the line" in about the proper place. Under the facts and circumstances of the present case, we perceive no particular prejudice from the court's rulings, and any possible error

would be harmless error.[4]

Counsel next argues that improper closing argument to the jury by the prosecution dictates a reversal of McAleer's conviction and sentence. In his final argument to the jury the prosecuting attorney characterized certain testimony of McAleer as being a "bald faced lie." Counsel objected to that statement as being the prosecutor's "personal belief" and that such was "inappropriate." The objection was overruled without argument. The prosecutor then immediately thereafter suggested to the jury that the basis for his statement was that McAleer's testimony at trial regarding a particular matter was at odds with a tax return for 1994 which McAleer had signed. Moments later, after the prosecutor had concluded his argument, counsel, outside the presence of the jury, renewed his objection to the prosecutor's statements, arguing that the prosecutor's "personal belief" that McAleer lied in his testimony was improper and that the prosecutor in his final closing argument improperly suggested that if the jury returned a "not guilty" verdict, "then get ready for you and your friends or whoever to buy some units." Counsel then asked for a mistrial, or in the alternative for a "curative" instruction. The district court denied the motion for a mistrial, but gave the following curative instruction

---

[4]We reject counsel's suggestion that the reasoning of the Second Circuit in *United States v. Giovanelli,* 945 F.2d 479 (2nd Cir. 1991), if followed, would dictate a reversal of the present judgment and sentence. That case presented an unusual fact situation not presented by the instant case. In that case the Second Circuit, in holding that the distinction between "proceeding" and "trial" was not "minimal," tied its holding to the "context of this case." *Id.* at 493. Our case is not the factual equivalent of *Giovanelli.*

to the

jury:

> Ladies and gentlemen, I found it necessary to give you a further instruction that you should take with you to the jury room along with the other instructions to consider, and it is this: In closing arguments, Assistant United States Attorney Mr. Pico may have stated a personal opinion that the defendants lied about having put their own money in the Gilmore programs. It is improper for a prosecutor to state a personal opinion.
>
> Second, Mr. Pico's reference to the McAleers' 1994 tax return in support of the government's claim only relates to the McAleers' costs in 1994. You should rely on all the evidence in this case to determine whether or not the McAleers paid money to purchase units in other calendar years and any inferences to be drawn therefrom.
>
> Finally, any argument that you should find the defendants guilty to stop others from continuing Gilmore-related programs or any argument to send a message to anyone is not a proper argument and you should disregard such argument entirely.

We find no error in the district court's handling of this matter. It is agreed that a prosecutor's expression of his personal belief that a defendant is guilty, or lying in his testimony before the jury, is improper. However, as we read the record, the prosecutor's argument was that the tax return for 1994 demonstrated that McAleer was lying in some of his testimony before the jury. In any event, in our view the curative instruction prepared by defense counsel, which covered both matters, took care of any problem. Neither, under the circumstances, warrants a reversal.

In his brief, counsel for McAleer also asserts that the district court erred in

allowing Donald MacPherson to testify as a government witness, arguing that such violated the attorney-client privilege, the work product doctrine and the common interest privilege. In both of McAleer's trials the district court overruled counsel's objections to MacPherson's testimony on the grounds, *inter alia,* that there was no showing of the existence of any attorney-client relationship between MacPherson and McAleer and that the latter had disclosed many of the documents in question to numerous third parties, thereby waiving any possible privilege. In his oral argument in this court, counsel made no mention whatsoever of this particular matter and only argued the two matters set forth above. Be that as it may, we are not persuaded that the district court erred in allowing MacPherson to testify against McAleer. Nor are we persuaded by counsel's suggestion that there was some sort of an attorney-client relationship between MacPherson and McAleer. MacPherson may well have been representing other persons or entities in connection with other aspects of this wide ranging scam, but not McAleer. The district court did not abuse its discretion.

Judgement affirmed.

Entered for the court,


Robert H. McWilliams
Senior Circuit Judge